IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAHEEN KHAMISANI, *et al.*, | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-10-0728 |
| ERIC HOLDER, *et al.*, | § § | |
| Defendants. | § § § | |

## MEMORANDUM AND ORDER

The plaintiffs have filed a complaint challenging an adverse administrative decision by the United States Citizenship and Immigration Service ("USCIS") in connection with an employment-based (EB-1) immigrant visa petition. The defendants have provided a copy of the administrative record and have filed a motion for summary judgment.[1] (Docket No. 14). The plaintiffs have not filed a response and the time to do so has expired. After reviewing all of the pleadings, and the applicable law, the Court **grants** the defendants' motion and **dismisses** this case for reasons set forth below.

---

[1] With substitutions made where necessary under Rule 25(d) of the Federal Rules of Civil Procedure, the following defendants are sued in their official capacity only: United States Attorney General Eric H. Holder, Jr.; Secretary Janet Napolitano of the Department of Homeland Security; USCIS Director Alejandro Mayorkas; Regional Director Marilyn Wiles of the USCIS Nebraska Service Center; and Perry Rhew, who serves as Chief of the USCIS Administrative Appeals Office.

## I.     BACKGROUND

The primary plaintiff, Shaheen Khamisani (A#098-702-587), is a native and citizen of Pakistan. The other plaintiff in this case is KB Affordable, Inc. ("KBA"). KBA purports to be a registered Texas corporation, located in Sugar Land, that engages in "furniture retail and car rental services." KBA states that it is an affiliate of Khamisani Brothers Limited ("KBL"), which is located in Karachi, Pakistan.

Ms. Khamisani entered the United States in 2004 on a non-immigrant visitor's visa.[2] On November 9, 2006, KBA filed a Form I-140 petition on Ms. Khamisani's behalf for an employment-based immigrant visa.[3] In particular, KBA requested an immigrant visa designating Ms. Khamisani as a "multinational executive or manager" (otherwise known as an EB-1 visa).[4] The visa petition was accompanied by a Form I-485 application to adjust Ms. Khamisani's status to that of a lawful permanent resident.

---

[2]   Generally, "nonimmigrants" are aliens with a permanent foreign residence who wish to be in the United States on a temporary basis, while "immigrants" are aliens who seek permanent residence in the United States. *See* 8 U.S.C. §§ 1101(a)(15), 1184(a); *Elkins v. Moreno*, 435 U.S. 647, 664-65 (1978).

[3]   There are three types of immigrant visas: (1) family-based immigrant visas; (2) employment-based visas; and (3) diversity immigrant visas. 8 U.S.C. §§ 1151(a)(1), (2), (3).

[4]   The EB-1 visa is available on a preferential basis for "priority workers" with: (A) "extraordinary ability" of sustained national or international acclaim; (B) "outstanding professors and researchers"; and (C) certain multinational executives and managers. 8 U.S.C. § 1153(b). *See* CHARLES GORDON, STANLEY MAILMAN, & STEPHEN YALE-LOEHR, 3 IMMIGRATION LAW AND PROCEDURE § 39.03[1].

On July 23, 2007, a regional USCIS office (the Nebraska Service Center) requested additional evidence to support the visa petition that KBA filed on Ms. Khamisani's behalf. On February 28, 2008, the Regional Director of the Nebraska Service Center denied the Form I-140 visa petition after finding that KBA did not meet its burden to show that it qualified for the type of visa requested. Without a valid immigrant visa, officials also denied Ms. Khamisani's Form I-485 application for an adjustment of status. On December 9, 2009, the USCIS Administrative Appeals Office ("AAO") affirmed the decision and dismissed the appeal filed on Ms. Khamisani's behalf by KBA. Thereafter, the AAO denied KBA's motion to reopen and/or reconsider the appeal.

Ms. Khamisani and KBA contend that the administrative decision to deny the Form I-140 petition for an employment-based visa was "arbitrary and capricious" because Ms. Khamisani was qualified for classification as a multinational executive or manager. The plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The defendants have filed a motion for summary judgment, along with the administrative record, arguing that the decision at issue was not arbitrary or capricious because KBA failed to meet all the criteria for the requested visa. The parties' contentions are discussed below under the governing legal standard.

## II. STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.*

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide specific facts showing the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, the court has no obligation under Rule 56 "to sift through the record in search of evidence

to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quotation omitted).

As noted above, the plaintiffs have not filed a response to the motion for summary judgment. According to this Court's local rules, responses to motions are due within twenty-one days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is "taken as a representation of no opposition." S.D. TEX. R. 7.4. The Court expressly directed the plaintiffs to respond and even granted an extension of time. (Docket Nos. 12, 17). To date, however, no response has been received. Notwithstanding the plaintiffs' failure to respond, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed. *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the motion. *See Beard v. Banks*, 548 U.S. 521, 527 (2006); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

## III. DISCUSSION

### A. Judicial Review of Administrative Decisions

As noted above, the plaintiffs seek declaratory relief from the administrative decision denying an employment-based visa petition for the preferential classification reserved for multinational executives and managers. The plaintiffs invoke jurisdiction under the Administrative Procedures Act (the "APA"), 5 U.S.C. § 706. Decisions to grant or deny visa petitions are subject to judicial review under 5 U.S.C. § 706, but the standard is a highly deferential one which presumes that the agency's action is valid. *See Louisiana Philharmonic Orchestra v. INS*, 44 F. Supp. 2d 800, 802 (W.D. La. 1999) (citing *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981)); *see also United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (suggesting that agency decisions are entitled to significant deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) where the regulatory scheme is "highly detailed" and the agency interpretation involves "specialized experience").

The USCIS enjoys broad discretion in deciding whether to grant or deny visa petitions based on preference classifications. *See Louisiana Philharmonic*, 44 F. Supp. 2d at 802 (citing *Omni Packaging, Inc. v. United States INS*, 733 F. Supp. 500, 502 (D.P.R. 1990)). A reviewing court may not reverse or set aside the agency's decision unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *National Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989). Thus, this narrow scope of review forbids a reviewing court

from substituting its judgment for that of the agency, and mandates affirmance if a rational basis exists for the agency decision, even if the court might otherwise disagree. *See Louisiana Philharmonic*, 44 F. Supp. 2d at 802-03.

### B. Multinational Executives and Managers

After considering the domestic workforce and the need for highly skilled workers, Congress authorizes a limited number of employment-based visas each year. *See* CHARLES GORDON, STANLEY MAILMAN, & STEPHEN YALE-LOEHR, 3 IMMIGRATION LAW AND PROCEDURE § 39.03[1]. The USCIS allocates a number of these immigrant visas to "certain multinational executives and managers" who serve "in a capacity that is managerial or executive." 8 U.S.C. § 1153(b)(1)(C); *IKEA U.S. v. U.S. Dep't of Justice, INS*, 48 F. Supp. 2d 22, 24 (D.D.C. 1999). If qualified, multinational executives and managers are among those workers given "first priority" for visas in the employment context, along with aliens possessing "extraordinary ability in the sciences, arts, education, business, or athletics, which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." *Aliens for Better Immigration Laws v. U.S.*, 871 F. Supp. 182, 184 (S.D.N.Y. 1994) (discussing the preference classification for "priority workers" in the employment-based system of immigration established by Congress); *see also Succar v. Ashcroft*, 394 F.3d 8, 15 n.6 (1st Cir. 2005) (listing the categories of visas and identifying the multinational manager or executive as among the those given "first priority") (citing 8 U.S.C. § 1153(b)); *see also Q Data Consulting, Inc. v. INS*, 293 F. Supp. 2d 25, 28

(D.D.C. 2003) (noting that only a limited number of these employment-based classifications are available for multinational executives and mangers because these are considered "priority workers"). Visas within this classification are considered valuable by employers because they are not subject to the labor certification requirement, which can be a lengthy process. *See, e.g., Buletini v. INS*, 860 F. Supp. 1222, 1227 (E.D. Mich. 1994) ("The labor certification verifies that there are not sufficient American workers able, willing, qualified, and available in the alien's field of endeavor, and that employment of the alien will not adversely affect American labor.") (citations omitted).

Eligibility for the EB-1 multinational-executive-or-manager visa is governed by the Immigration and Nationality Act (the "INA") and its attendant implementing regulations. Under this legal framework, a United States employer seeking to permanently hire an alien in this visa category must file a Form I-140 petition with the USCIS on behalf of the intended beneficiary. *See* 8 U.S.C. § 1153(b)(1)(C); 8 C.F.R. § 204.5(j)(1). The employer must demonstrate that the beneficiary has been employed with a foreign company and seeks to enter the United States to continue employment with the same employer, or with a subsidiary or affiliate thereof, in a "managerial" or "executive" capacity. 8 U.S.C. § 1153(b)(1)(C). To satisfy the requirements for this visa, a United States employer must demonstrate that the beneficiary of the visa petition has been employed with the company in one of the three years immediately preceding the submission of the Form I-140. *See* 8 C.F.R. § 204.5(j)(3)(i). The prospective employer must submit a written job offer, along with a detailed description of the specific duties

entailed by the proposed position, that indicates an intent to employ the beneficiary in the United States in a managerial or executive capacity. *Id.* § 204.5(j)(5).

The INA defines "managerial capacity" narrowly with reference to the potential employee's proposed position within the multinational organization, emphasizing as follows:

> (A) Managerial capacity means an assignment within an organization in which the employee *primarily* —
>
> (i) Manages the organization, or a department, subdivision, function, or component of the organization;
>
> (ii) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
>
> (iii) If another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization), or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
>
> (iv) Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A) (emphasis added); *see also* 8 C.F.R. § 204.5(j). The statute makes the following distinction: "A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional." 8 U.S.C. § 1101(a)(44)(A)(iv).

The term "executive capacity" is also narrowly defined with reference to the potential employee's proposed position within the multinational organization:

> (B)　　The term "executive capacity" means an assignment within an organization in which the employee *primarily* —
>
> (i)　　directs the management of the organization or a major component or function of the organization;
>
> (ii)　　establishes the goals and policies of the organization, component, or function;
>
> (iii)　　exercises wide latitude in discretionary decision-making; and
>
> (iv)　　receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 U.S.C. § 1101(a)(44)(B) (emphasis added); *see also* 8 C.F.R. § 204.5(j). The INA adds the following clarification where staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity:

> If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function. An individual shall not be considered to be acting in a managerial or executive capacity (as previously defined) merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C.§ 1101(a)(44)(C); *see also* 8 C.F.R. § 204.5(j). In other words, "[a] company's size alone may not be the determining factor in denying a visa to a multinational manager or executive." *Hakimuudin v. Dep't of Homeland Security*, Civil No. H-08-1261, 2009 WL 497141, *4 (S.D. Tex. 2009) (citing *Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 15

(D.D.C. 2001)); *see also Family Inc. v. USCIS*, 469 F.3d 1313, 1315-16 (9th Cir. 2006) (observing that "small size, standing alone," does not preclude an employee from meeting the qualification for executive or managerial capacity). "Rather, the executive's duties must be the critical factor." *Hakimuudin*, 2009 WL 497141, *4 (citing *National Hand Tool Corp. v. Pasquarell*, 889 F.2d 1427, 1476 n. 5 (5th Cir. 1989)).

### C. Ms. Khamisani's Petition

In support of its petition for an employment-based visa as a multinational executive or manager, KBA provided a letter which described its affiliation with KBL. (Admin. Rec. at 284). The letter also described Ms. Khamisani's educational background and employment history, which included work for "the Khamisani Group" from 1994 through 2004, when KBL was acquired by a different entity ("M/S Net-Line"). (Admin. Rec. at 285, 287). In addition, the letter listed the general duties and responsibilities of Ms. Khamisani's proposed employment with KBA as its "Director of Business Development," which included: (1) expanding KBA's furniture retail and car rental business within the United States; (2) planning and developing investments, analyzing market trends, and setting goals for KBA's sales efforts; (3) conducting business operations and activities; (4) formulating policies for sales and marketing; (5) hiring and firing personnel in the sales and marketing department; (6) collaborate with others to develop an overall territory account plan to generate sales opportunities and sales activity; (7) generate new business and growth in existing accounts; (8) achieve/exceed monthly sales targets and gross profit quota; (9) lead negotiations, coordinate complex

decision-making, and overcome objections to new business opportunities; (10) grow and maintain existing customer relationships; (11) develop marketing related events, seminars, mailings, etc.; and (12) develop strong knowledge of leading industry trends. (Admin. Rec. at 288-89).

On July 23, 2007, the Nebraska Service Center issued a request for additional evidence in support of the KBA's visa petition for Ms. Khamisani. (Admin. Rec. at 273-74). The letter noted that KBA failed to provide information about the precise number of its employees, along with the requisite documentation. (*Id.* at 274). The letter also requested an organizational chart for the organization, salary information for the proposed position, corporate tax returns, and greater details about the "specific actions" Ms. Khamisani would be expected to undertake in pursuit of certain duties that were referenced in the general job description for the proposed position as KBA's Director of Business Development. (*Id.*).

KBA responded with a variety of documents and a few additional details about the "executive" nature of Ms. Khamisani's proposed employment. (Admin. Rec. 94-98, 99-272). KBA mentioned that Ms. Khamisani would be expected to "network[] in the local communities," to study and prepare reports based on "future investments on behalf of the business, and play an "active role in negotiating development contracts, service contracts, and finalizing future business operations." (Admin. Rec. at 96). She would also be expected to "keep abreast of developments in the industry she is dealing with (most commonly, the rental industry, but this has grown to encompass jewelry and furniture

sales)," and to focus on "managing a large staff and keep track of what is working and what is not" to ensure that "the business is keeping up with sales trends." (Admin. Rec. at 97). It is undisputed, however, that KBA failed to provide any of the requested information to verify the number of its employees. Likewise, although KBA provided tax returns and other documents, none of the business information pertained to KBA. Instead, the information related to "Khamisani Business Services, Inc.," which was not the petitioning entity.

On February 28, 2008, the defendants denied the Form I-140 visa petition filed on Ms. Khamisani's behalf. The Director of the Nebraska Service Center found that KBA had not established that Ms. Khamisani would be employed "primarily" in a managerial or executive capacity as defined by the INA. (Admin. Rec. at 77-80). In particular, the Director noted that the described duties did not meet the definition of "executive or managerial," but were instead "the duties of a marketing representative or sales agent." (Admin. Rec. at 79). The Director concluded, therefore, that KBA did not meet its burden of proof.

The Administrative Appeals Office affirmed the decision and dismissed the appeal on December 9, 2009. The AAO noted that KBA did not demonstrate that Ms. Khamisani would be employed primarily in a management or executive capacity because it failed to sufficiently clarify the specific tasks she would perform or to otherwise document what proportion of Ms. Khamisani's duties would be managerial or executive in nature in relation to the organizational hierarchy, as opposed to other non-qualifying

tasks. (Admin. Rec. 50). As alternate grounds for denying the petition, the AAO found that the evidence was insufficient to establish other pertinent criteria by showing that: (1) Ms. Khamisani was employed abroad in a qualifying position for at least one of the three years prior to the submission of the Form I-140; (2) KBA had the ability to pay Ms. Khamisani's proffered wage as of the date the Form I-140 was filed; and (3) KBA existed as a legal entity that could be considered a United States employer eligible to file the Form I-140 on Ms. Khamisani's behalf. (Admin. Rec. 50-51). In making these additional findings, the AAO noted that KBA apparently "ceased to exist as a legal entity" several months before the visa petition was filed. (*Id.* at 51). For these additional reasons, the AAO denied the petition. (*Id.*).

### D. The Administrative Decision Was Not Arbitrary or Capricious

The plaintiffs argue that the administrative decision to deny KBA's visa petition was arbitrary and capricious because there was evidence in the record demonstrating that Ms. Khamisani's proposed duties at KB could be considered managerial or executive in nature. The defendants disagree, noting that KBA failed to provide a specific and detailed description of the proposed job duties as required for determining whether those duties are primarily executive or managerial in nature as required by the applicable legal framework.

As outlined above, the statutory language requires evidence that the proposed duties were *primarily* managerial or executive in nature. 8 U.S.C. § 1101(a)(44)(A). "By requiring that the duties be primarily managerial or executive, the express language of the

regulations excludes workers whose job involves a mix of management and non-management responsibilities." *Shine's Ranch Corp. v. Ridge*, No. 3:04-2371, 2005 WL 1923595, *3 (N.D. Tex. 2005). Absent specific information, general descriptions of business-related tasks are insufficient to comply with the implementing regulations and do not demonstrate that a beneficiary's proposed duties are primarily managerial or executive, as opposed to non-managerial. *See* 8 C.F.R. § 204.5(j)(5) (requiring a detailed statement that "clearly describe[s] the duties to be performed by the alien" in a managerial or executive capacity); *Republic of Transkei v. INS*, 923 F.2d 175, 177 (D.C. Cir. 1991) (observing that the plaintiff "failed to document what proportion of [the beneficiary's] duties would be managerial/executive functions and what proportion would be non-managerial/non-executive"); *IKEA U.S., Inc. v. Dep't of Justice, INS*, 48 F. Supp.2d 22, 24-25 (D.D.C.1999) (noting that a petitioner must "quantify the time" an employee spends on managerial duties); *Shine's Ranch*, 2005 WL 1923595, *3 (noting that, in failing to produce specific information of the proposed duties, "the Plaintiff was unable to prove that the duties were mostly managerial or executive").

    In this case, the initial statement submitted by KBA in support of the visa petition merely recited a list of business objectives to be performed by Ms. Khamisani as KBA's prospective Director of Business Development. (Admin. Rec. at 288-89). In an effort to clarify whether her duties would be primarily those of an executive or manager, the Service Center requested specific information about the actual duties that would be performed by Ms. Khamisani. Although KBA provided some additional details, there

was little information about the actual tasks that Ms. Khamisani would perform to carry out the broad objectives outlined in the job description. Likewise, there was no information about what portion of her duties would be managerial and what portion would be devoted to performing non-managerial tasks.

The general job description provided by KBA falls short of the detailed description that is required by the implementing regulations to determine that the proposed employee's actual duties would be primarily managerial or executive in nature. *See* 8 C.F.R. § 204.5(j)(5); *Republic of Transkei*, 923 F.2d at 177. General descriptions are inadequate to satisfy the implementing regulations because, as one court has observed, "[t]he actual duties themselves reveal the true nature of the employment." *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989). The facts in this record simply do not compel the conclusion that Ms. Khamisani would have been primarily engaged in managerial duties, as opposed to ordinary operational activities conducted by a sales representative. Because the evidence submitted by KBA did not establish specific information that Ms. Khamisani's actual duties would be primarily managerial or executive in nature, as those terms are defined by 8 U.S.C. § 1101(a)(44)(A) and the implementing regulations, KBA did not meet its burden to show that Ms. Khamisani was eligible for the requested visa as a multinational executive or manager. *See* 8 U.S.C. § 1361; *see also National Hand Tool*, 889 F.2d at 1475 ("It is well settled that the applicant for a visa bears the burden of establishing eligibility."); *Q Data Consulting, Inc. v. INS*, 293 F. Supp. 2d 25, 29 (D.D.C. 2003) (declining to vacate

an administrative determination that the proposed beneficiary's employment responsibilities were not primarily managerial). Therefore, the plaintiffs do not demonstrate that the administrative agency abused its discretion or that the decision to deny the visa petition was arbitrarily or capriciously made. Because the record does not disclose a material fact issue, the defendants are entitled to summary judgment on this question.

In the alternative, even assuming that KBA's proposed job description were sufficiently detailed, the defendants note that KBA failed to provide other pertinent information requested by the Service Center. The administrative record confirms that the AAO affirmed the Regional Director's decision to deny the petition and listed several additional grounds. (Admin. Rec. 50-51). The defendants correctly note that, if the AAO denies a petition based on multiple grounds, the plaintiff will succeed with a challenge only if the plaintiff shows that the AAO abused its discretion with respect to all of the enumerated grounds. *See Spencer Enters. Inc. v. U.S.*, 229 F. Supp. 2d 1025, 1037 (E.D. Cal. 2001), *aff'd*, 345 F.3d 683 (9th Cir. 2003). Because the plaintiffs have made no effort to dispute the AAO's decision based on the additional grounds, the defendants are entitled to summary judgment for this additional reason.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Docket No. 14) is **GRANTED**.

2. This case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas this 31st day of March, 2011.

 _____
 Kenneth M. Hoyt
 United States District Judge